FILED
United States Court of Appeals
Tenth Circuit

October 18, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARIA GUADALUPE IRAZOQUI-
LEYVA, a/k/a Maria Leyva, a/k/a
Maria Guadalupe Leyva, a/k/a Maria
Guadalupe Irazoquie-De La Rosa,
a/k/a Maria Irazoqui-Layva, a/k/a
Maria Irazoqui,

    Defendant - Appellant.

No. 09-4196
(D.C. No. 1:09-CR-00063-TC-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Maria Guadalupe Irazoqui-Leyva pled guilty to illegal

reentry to the United States, 8 U.S.C. § 1326, and was sentenced to 37 months'

imprisonment to be followed by 36 months' supervised release. She now appeals,

contending her sentence is procedurally and substantively unreasonable. Ms.

Irazoqui concedes that she cannot prevail on her procedural reasonableness claim

_____

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

under our plain error standard, however, and raises it only to preserve the issue for future review. Aplt. Br. at 7-8; see United States v. Poe, 556 F.3d 1113, 1128 (10th Cir. 2009). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm.

Background

On August 18, 2009, Ms. Irazoqui-Leyva consented to a presentence investigation in advance of a plea. 1. Supp. R. at 7. The resulting presentence report (PSR) calculated Ms. Irazoqui-Leyva's advisory guidelines imprisonment range as 37 to 46 months based on a total offense level of 17 and a criminal history category of IV. 2 R. at 15. The government determined that Ms. Irazoqui-Leyva met the eligibility requirements for the "fast track" benefit. 1. Supp. R. at 8. Had she entered into a fast-track plea agreement she would have been eligible for a two-level downward departure upon a government motion pursuant to United States Sentencing Guideline (USSG) § 5K3.1, resulting in a range of imprisonment from 30 to 37 months. 2 R. at 16. See United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005) ("In jurisdictions where fast-track programs have been authorized by the Attorney General, defendants must 'agree to the factual basis [of the criminal charge] and waive the rights to file pretrial motions, to appeal, and to seek collateral relief (except for ineffective assistance of counsel).'" (alteration in original) (quoting United States v.

- 2 -

Melendez-Torres, 420 F.3d 45, 52 (1st Cir. 2005))).  In addition to the potential for a fast-track departure, the PSR noted Ms. Irazoqui-Leyva's need to care for six children currently in the custody of her mother, who suffers from health problems, as a mitigating factor that could justify a sentence below the guideline range. 2 R. at 18.

Ms. Irazoqui-Leyva entered a plea of guilty without a plea agreement on October 13, 2009.  She did not enter into a fast-track plea agreement, hoping for an even lower sentence.  3 R. at 14-15.  At the sentencing hearing which immediately followed the plea, Ms. Irazoqui-Leyva requested that the district court vary not only from the bottom of the Guideline range (37-46 months) but also from the range that would have applied had she been sentenced after entering a plea pursuant to the fast-track program (30-37 months). 3 R. at 19.

Discussion

We review the district court's sentence for reasonableness under an abuse of discretion standard.  United States v. Booker, 543 U.S. 220, 261 (2005); Gall v. United States, 552 U.S. 38, 51 (2007).  In examining the reasonableness of a sentence, we review the district court's factual findings for clear error and legal determinations de novo.  United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006).

Ms. Irazoqui-Leyva does really not dispute the district court's application

of the guidelines; therefore the sentence imposed is presumptively reasonable. See id. at 1055 ("If [] the district court properly considers the relevant Guidelines range and sentences the defendant within that range, the sentence is presumptively reasonable. The defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a)."). She asserts that the sentence overcomes the presumption of reasonableness because (a) USSG § 2L1.2 overstates the significance of her conduct and (b) the Guideline range fails to account for numerous mitigating facts. See Aplt Br. at 10-13 (discussing United States v. Paul, 561 F.3d 970 (9th Cir. 2009) (mitigating facts) and United States v. Amezcua-Vasquez, 567 F.3d 1050 (9th Cir. 2009) (overstatement of prior criminal record)); id. at 5 (arguing that a sentence within the guideline range be evaluated for substantive reasonableness based upon (1) whether a guideline overstates relevant conduct and (2) whether the applicable guideline range does not account for the numerous factors that should be considered at sentencing).

Ms. Irazoqui-Leyva asserts that § 2L1.2 overstates the significance of her prior criminal record because it double counts her prior convictions and the enhancement is unnecessarily high and not empirically based. Aplt. Br. at 13. However, we routinely uphold the practice of taking a conviction into account in both the computation of the offense level enhancement and of the criminal history points where authorized by the Guidelines. See USSG § 2L1.2(b)(1), cmt. n. 6

- 4 -

("A conviction taken into account under subsection (b)(1) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)."); United States v. Ruiz-Terrazas, 477 F.3d 1196, 1204 (10th Cir. 2007). Her argument that the enhancement is too high and not empirically based is not a challenge to the district court's exercise of discretion but a challenge to the Guideline itself. See United States v. Aguilar-Huerta, 576 F.3d 365, 368 (7th Cir. 2009) ("But what is the space between invalidating a guideline and refusing ever to apply it because it's no good? We don't think there is any, and therefore there would be little point in remanding for resentencing so that the defendant could argue invalidity–which is what his argument amounts to, though not labeled as such–to the district judge."). And, as Ms. Irazoqui-Leyva aptly recognizes, Aplt. Br. 21, there are circumstances in which it is appropriate for a sentencing court to impose a sentence below a guideline but in which it is not required to do so. While the district court would have had substantial leeway to accept Ms. Irazoqui-Leyva's argument that the enhancement is excessive, it was not required to. Accord United States v. Lopez-Reyes, 589 F.3d 667, 671 (3d Cir. 2009) ("[A] district court is not required to engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline."); Aguilar-Huerta, 576 F.3d at 367-68 ("[W]e do not think a judge is required to consider, not a nonfrivolous argument that a guideline produces an unsound

sentence in the particular circumstances of the case, but an argument that a guideline is unworthy of application in <u>any</u> case because it was promulgated without adequate deliberation."); <u>United States v. Mondragon-Santiago</u>, 564 F.3d 357, 367 (5th Cir. 2009) ("In appropriate cases, district courts certainly may disagree with the Guidelines for policy reasons and may adjust a sentence accordingly. But if they do not, we will not second-guess their decisions under a more lenient standard simply because the particular Guideline is not empirically-based.").

In support for the second portion of her argument, as examples of numerous mitigating facts in her case, Ms. Irazoqui-Leyva asserts both her cultural assimilation to the United States and her substantial compliance with Utah's fast-track program, in which she opted not to participate. Aplt. Br. 22, 29. With respect to cultural assimilation she cites departure language recently promulgated by the Sentencing Commission that is slated to go into effect November 1, 2010. Aplt. Rep. Br. 14. This language was not in effect at the time of Ms. Irazoqui-Leyva's sentencing and therefore we need not consider its impact on the outcome of this case. However, we may consider Ms. Irazoqui-Leyva's cultural assimilation as part of our review of the district court's sentence for abuse of discretion. See <u>United States v. Galarza-Payan</u>, 441 F.3d 885, 889-90 (10th Cir. 2006) ("The extensiveness of 'family and cultural ties,' however the factor is characterized, will still be part of tailoring an appropriate sentence. But it is also

clear in assessing the reasonableness of a sentence that a particular defendant's cultural ties must be weighed against other factors such as (1) sentencing disparities among defendants with similar backgrounds and characteristics, and (2) the need for the sentence to reflect the seriousness of the crime and promote respect for the law.").

With respect to her compliance with the fast-track program, Ms. Irazoqui-Leyva directs our attention to the split among the circuits that has emerged regarding whether sentencing courts in non-fast-track districts have discretion to grant below-Guidelines sentences to mitigate disparity with sentences in fast-track districts. Aplt. Br. 30-31. In United States v. Martinez-Trujillo this circuit answered in the negative the question "whether sentencing disparities caused by the existence of fast-track programs are or are not, or may be in certain circumstances, considered unwarranted under § 3553(a)(6)." 468 F.3d 1266, 1268 (10th Cir. 2006). But this case does not present an inter-district disparity caused by the unavailability of a fast-track option. Instead it concerns intra-district disparity among those defendants who participate in the fast-track program, waiving their attendant rights, and those who, like Ms. Irazoqui-Leyva, forgo the conditions and benefits of fast track. Ms. Irazoqui-Leyva in effect argues that her eligibility for the fast-track program should entitle her to its benefits, which is surely not the case. See id. at 1269 ("[T]he decision that a defendant be 'fast-tracked' is not made by the defendant but by the United States Attorney."

(citing USSG § 5K3.1)).

18 U.S.C. § 3553(a) instructs sentencing courts to take into account factors including "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant." Id. § 3553(a)(2). Ms. Irazoqui-Leyva had three misdemeanor convictions, in 2001, 2005, and 2006, of possession of drug paraphernalia, and two felony convictions of possession of cocaine, methamphetamine, and marijuana with intent to distribute in 2006 and 2007. 2 R. at 1. Her drug convictions particularly concerned the court, despite her compelling personal circumstances. 3 R. at 30. In sentencing her to 37 months in custody, the low end of the Guideline range, the district court balanced her serious and extensive criminal history with her difficult circumstances, desire to care for her children, and feasible plans for the future. 3 R. at 30.

We hold that Ms. Irazoqui-Leyva's 37-month sentence is within the range of rationally permissible choices, and the district court did not abuse its discretion in rejecting a further downward departure or variance from the Guidelines. See United States v. Chavez-Suarez, 597 F.3d 1137, 1139 (10th Cir. 2010). Because Ms. Irazoqui-Leyva's sentence was procedurally and substantively reasonable, the

judgment must be

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge