**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MANUEL ANTONIO ROSALES-
MIRANDA,

    Defendant - Appellant.

No. 13-1150
(D.C. No. 1:12-CR-00356-WJM-1)

_____

**ORDER**
_____

Before **KELLY**, **GORSUCH**, and **HOLMES**, Circuit Judges.
_____

This matter is before the court on appellant's *Motion for Publication of Order and Judgment*. We also have a response from the United States. Upon consideration, the motion to publish is granted. The court's June 17, 2014 decision has been reformatted as a published opinion and is attached to this order. The clerk is directed to file the published opinion nunc pro tunc to the original filing date.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

**June 17, 2014**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MANUEL ANTONIO ROSALES-
MIRANDA,

      Defendant - Appellant.

No. 13-1150

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:12-CR-00356-WJM-1)**

---

Jill M. Wichlens, Assistant Federal Public Defender (Warren R. Williamson, Federal Public Defender, Interim, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Robert M. Russel, Assistant United States Attorney, (Laurie K. Dean, Special Assistant United States Attorney, and John F. Walsh, United States Attorney, on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **KELLY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

      Defendant-Appellant Manuel Rosales-Miranda was convicted of illegal

reentry after being deported, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2).

The district court applied a sixteen-level enhancement to Mr. Rosales-Miranda's offense level pursuant to § 2L1.2(b)(1)(A)(ii) of the U.S. Sentencing Guidelines ("U.S.S.G." or "the Guidelines"), which allows for such an enhancement where the defendant has a prior crime-of-violence felony conviction. The district court applied the enhancement based on two misdemeanor Virginia state domestic-violence convictions. The parties now agree not only that this was error, but also that it was clear or obvious error under current law, as those domestic-violence convictions were not felonies. The parties disagree, however, regarding whether the error affected Mr. Rosales-Miranda's substantial rights and whether it has seriously affected the fairness, integrity, or public reputation of judicial proceedings. Exercising jurisdiction under 28 U.S.C. § 1291, we **reverse** the district court's sentencing order and **remand** the case, instructing the district court to **vacate** Mr. Rosales-Miranda's sentence and to conduct a resentencing proceeding consistent with this order and judgment.

**I**

Mr. Rosales-Miranda was indicted for illegally reentering the United States after being deported, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). He pleaded guilty to these criminal charges. An officer of the United States Probation Office then prepared a Presentence Investigation Report ("PSR"). The PSR started with a base offense level of eight, as provided by U.S.S.G.

2

§ 2L1.2(a).[1]  It then applied a sixteen-level enhancement under

§ 2L1.2(b)(1)(A)(ii)—the crime-of-violence enhancement—which is warranted

when the defendant illegally reenters the United States after receiving a felony

conviction for "a crime of violence."  R., Vol. III, ¶ 16, at 28 (PSR, dated Jan. 25,

2013).  The PSR applied the enhancement referencing two 2004 convictions

entered by a Virginia state court for "Assault and Battery on a Family Member"

(hereinafter, "the domestic-violence convictions").  *Id.*  From the adjusted offense

level of twenty-four, the PSR subtracted three levels for acceptance of

responsibility, resulting in a total offense level of twenty-one.

Turning to the criminal-history calculation, the probation officer recounted

in the PSR Mr. Rosales-Miranda's criminal record.  Along with an "Assault on a

Police Officer" conviction, *id.*, ¶ 33, at 30, the probation officer factored the

domestic-violence convictions into Mr. Rosales-Miranda's criminal-history score.

Accordingly, the PSR assigned Mr. Rosales-Miranda a criminal-history score of

twelve, resulting in a criminal-history category of V.  Using this criminal-history

category and the offense level of twenty-one, the PSR calculated an advisory

Guidelines range of seventy to eighty-seven months of imprisonment.  Neither

Mr. Rosales-Miranda nor the government objected to the PSR.

Pursuant to the written plea agreement, the government recommended a

---

[1]      The Probation Office used the 2012 edition of the Guidelines in preparing the PSR.  Because neither party has objected to this decision, we use the 2012 edition as well.

3

prison term of seventy months and (consistent with the PSR's recommendation) moved for a one-offense-level decrease under U.S.S.G. § 3E1.1(b) for acceptance of responsibility. Mr. Rosales-Miranda then moved for a downward variance, requesting a sentence not longer than thirty months based on the 18 U.S.C. § 3553(a) sentencing factors—specifically highlighting in this regard his personal history, his family situation, and the comparative leniency of the prior sentences for the purported felonies cited in support of the crime-of-violence enhancement.

At sentencing, the district court accepted the PSR's Guidelines computations. The court began its discussion, however, by noting that the "really disturbing" feature of Mr. Rosales-Miranda's case was the domestic-violence convictions. R., Vol. II, at 31 (Sentencing Tr., dated Mar. 19, 2013). The court remarked, "[O]ne of the crimes I cannot abide is domestic violence [toward] spouses." *Id.* It then recited Mr. Rosales-Miranda's grounds for his downward-variance motion, with particular emphasis on his claim that he had come to the United States to work so that he could send money to his elderly mother and young children in Guatemala. The district court also noted Mr. Rosales-Miranda's position that "even the 30-month sentence he requested in this motion would by far be the longest amount of time he [had] ever spent in prison before and that such a variant sentence would be a profound deterrent to the defendant from ever returning to this country." *Id.* at 36.

After making these remarks, the district court addressed a policy

4

disagreement with the Guidelines, first stating that

> [a]part from the grounds set forth in the defendant's motion, I note that the offense level in this case is governed by Section 2L1.2 of the Sentencing Guidelines. In *United States [v.] Garcia-Jaquez*, [807 F. Supp. 2d 1005 (D. Colo. 2011)], this Court published its sentencing order and addressed the significant concerns I have with the application of this guideline to cases like the one before me today. I hereby incorporate by reference my reasoning set forth in *Garcia-Jaquez.*
>
> I find that in this case the double counting[2] of defendant's prior felony conviction[s] results in a guideline range greater than necessary to achieve the goals of Section 3553(a). Let me stress it is not my view that [these] prior conviction[s] [should] be eliminated entirely from either the offense level or the criminal history category. Instead, the double counting is a factor I will consider in determining the appropriate sentence to impose in this case.
>
> Moreover, I do not find that it is completely unwarranted to consider the defendant's prior convictions in determining a fair sentence. Indeed, it is because of defendant's prior criminal history record that I will grant the defendant's motion in part only.

*Id.* at 36–37. The district court then recited the facts of Mr. Rosales-Miranda's previous convictions, including that he attacked his wife "with his fist, kicking her, banging her head against a solid tile floor and striking her on the arms twice." *Id.* at 37. "Significantly," the district court added, "the defendant did not complete the anger management classes required by his state court sentence." *Id.*

---

    2       By "double counting," the district court apparently meant that when a district court applies the crime-of-violence enhancement, it counts the conviction not only for purposes of an enhancement of the defendant's offense level, but also for purposes of calculating the defendant's criminal-history score. *See Garcia-Jaquez*, 807 F. Supp. 2d at 1015.

Following that discussion, the district court announced that it would "impose a downward variant sentence based on [its] policy disagreement with the substantial effect that Section 2L1.2's double counting of defendant's prior felony conviction[s] has on Mr. [Rosales-Miranda's] guideline range." *Id.* at 38. Moreover, having thus stated *this* policy disagreement, the court proceeded to present another:

> I will also grant defendant's motion on the basis . . . that this particular guideline's sentencing enhancements are divorced from empirical data. As I examined in *Garcia-Jaquez*, the Sentencing Commission did no study to determine if this guideline's enhancements for prior convictions served any legitimate penological goal.
>
> As a result I find that in this case Section 2L1.2's sentencing range does not necessarily reflect a sentence that might achieve Section 3553(a)'s objectives.

*Id.*

Acting on these two policy disagreements, the district court sentenced Mr. Rosales-Miranda to thirty-six months in prison. Mr. Rosales-Miranda filed a timely notice of appeal.

## II

On appeal, the parties agree that the district court committed a sentencing error and that the error was clear or obvious. The parties also agree that Mr. Rosales-Miranda failed to preserve an objection to that error. This forfeiture triggers plain-error review. *See* Fed. R. Crim. P. 52(b); *United States v. Vasquez-Alcarez*, 647 F.3d 973, 976 (10th Cir. 2011) ("If [the defendant] has forfeited the

6

. . . argument, we review . . . only for plain error."); *United States v. Gonzalez-Jaquez*, 566 F.3d 1250, 1251 (10th Cir. 2009) (reviewing for plain error, where defense counsel failed to object to the district court's finding that offense was a crime of violence implicating sentencing enhancement); *see also United States v. Olano*, 507 U.S. 725, 731 (1993) (prescribing plain-error review for cases involving "errors that were forfeited because not timely raised in district court"). The parties only disagree about whether Mr. Rosales-Miranda fully satisfies our plain-error test.

As one of our sister circuits has deftly noted, "[t]he Supreme Court has cautioned appellate courts against the 'reflexive inclination' to reverse unpreserved error." *United States v. Carthorne*, 726 F.3d 503, 510 (4th Cir. 2013) (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009)), *cert. denied*, --- U.S. ----, 134 S. Ct. 1326 (2014). "As a result, relief on plain error review is 'difficult to get, as it should be.'" *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

Thus, Mr. Rosales-Miranda "[cannot] prevail unless he [can] successfully run the gauntlet created by our rigorous plain-error standard of review." *United States v. Bader*, 678 F.3d 858, 894 n.24 (10th Cir. 2012) (quoting *United States v. McGehee*, 672 F.3d 860, 866 (10th Cir. 2012)).

> Under this demanding standard, he must demonstrate: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court *may* exercise discretion to correct the

7

error if [4] it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*McGehee*, 672 F.3d at 876 (alteration in original) (emphasis added) (quoting *United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011)) (internal quotation marks omitted); *see also United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (noting the same requirements "[t]o obtain relief under this doctrine"). "We will not reverse a conviction for plain error unless all four prongs of the plain-error test are satisfied." *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008).

"[T]he plain-error standard, while difficult to overcome, serves an important goal: to balance 'our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.'" *United States v. Frost*, 684 F.3d 963, 971–72 (10th Cir. 2012) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). "Accordingly, we will find plain error only when an error is particularly egregious and the failure to remand for correction would produce a miscarriage of justice." *Id.* (quoting *United States v. Trujillo-Terrazas*, 405 F.3d 814, 820 (10th Cir. 2005)) (internal quotation marks omitted). We conclude that Mr. Rosales-Miranda has identified such an egregious error that satisfies the plain-error test; accordingly, his sentence cannot stand.

### III

The parties share the view that the first two prongs of the plain-error test

8

are satisfied—*viz.*, that the district court erred and that its error was clear or obvious. We see no reason to question this conclusion. Therefore, we turn our focus to the third and fourth prongs of the plain-error test.

**A**

In our third-prong inquiry under plain-error review, we ask whether the error seriously affected the defendant's substantial rights. An error seriously affects the defendant's substantial rights, as those terms are used in the plain-error test, when the defendant demonstrates "that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Mendoza*, 698 F.3d 1303, 1310 (10th Cir. 2012) (quoting *United States v. Weiss*, 630 F.3d 1263, 1274 (10th Cir. 2010)) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008) (quoting *Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002)) (internal quotation marks omitted). "We therefore must ask whether we are in doubt that, had the district court" calculated the advisory Guidelines range correctly, it would have imposed the same sentence. *Id.*

**1**

We conclude that there is a reasonable probability that, absent the district court's error, Mr. Rosales-Miranda would have received a different sentence. First, we note that the court's erroneous calculation produced a significant

9

deviation from the proper range: an erroneous Guidelines range of seventy to eighty-seven months, whereas the correct Guidelines range would have been either thirty to thirty-seven months, or thirty-three to forty-one months, subject to the proper criminal-history category.[3] Thus, the incorrect Guidelines calculation more than doubled Mr. Rosales-Miranda's advisory Guidelines range.

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Ray*, 704 F.3d 1307, 1315 (10th Cir.) (internal quotation marks omitted), *cert. denied*, --- U.S. ---, 133 S. Ct. 2812 (2013). The Guidelines thus form "the starting point and the initial benchmark" for all sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 49 (2007). "The district court must then consider the arguments of the parties and the factors set forth in [18 U.S.C.] § 3553(a)." *Peugh v. United States*, ---

---

[3]     We note as well that the parties perfunctorily joust about the proper criminal-history category to assign to Mr. Rosales-Miranda. The government contends that Mr. Rosales-Miranda's criminal-history score should have been thirteen—not twelve, as the PSR found and the district court adopted. Therefore, the government places Mr. Rosales-Miranda in criminal-history category VI, rather than V. Assuming that the sixteen-level crime-of-violence enhancement was applied in error, the government submits that the Guidelines imprisonment range would then have been thirty-three to forty-one months. Mr. Rosales-Miranda does not vigorously contest this possibility (if he does so at all), as he characterizes the appropriate sentencing range absent the crime-of-violence enhancement as *either* the thirty- to thirty-seven-month range, which would follow from a criminal-history category V, *or* the thirty-three- to forty-one-month range, which would follow from a category VI. However, we need not opine on the particulars of this dispute to resolve this appeal. For our purposes, the important point is that the sentencing error had the effect of more than doubling the operative Guidelines range, irrespective of whether Mr. Rosales-Miranda was properly assigned a criminal-history category of V or VI.

U.S. ----, 133 S. Ct. 2072, 2080 (2013). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.'" *Id.* at 2083 (alteration and omission in original) (quoting *Freeman v. United States*, --- U.S. ----, 131 S. Ct. 2685, 2692 (2011) (plurality opinion)). "Even if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*.'" *Id.* (quoting *Freeman*, 131 S. Ct. at 2692). "That a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing." *Id.*

Thus, because the Guidelines exert their force whenever a district court complies with the federal sentencing scheme by first calculating the Guidelines range, a miscalculation in the Guidelines range runs the risk of affecting the ultimate sentence *regardless of* whether the court ultimately imposes a sentence within or outside that range. *See United States v. Langford*, 516 F.3d 205, 217 (3d Cir. 2008) ("[W]hen the starting point for the § 3553(a) analysis is incorrect, the end point, i.e., the resulting sentence, can rarely be shown to be unaffected."); *accord United States v. Goodman*, 519 F.3d 310, 323 (6th Cir. 2008). This risk was especially grave here, and likely to be prejudicial to Mr. Rosales-Miranda, because the Guidelines calculation error had the effect of very significantly

11

increasing his Guidelines range—indeed, it more than doubled it.  Consequently, though the erroneous Guidelines starting point for the district court's § 3553(a) analysis was not even close to the proper "initial benchmark," *Gall*, 552 U.S. at 49, the court would have been obliged to begin its § 3553(a) analysis—including its consideration of the possibility of a downward variance—from this false, comparatively stratospheric Guidelines plateau.  Put another way, the Guidelines baseline from which the district court ultimately determined Mr. Rosales-Miranda's sentence and decided to vary downward was significantly higher than it should have been, which strongly suggests that there is a reasonable probability that Mr. Rosales-Miranda was prejudiced by the sentencing error that produced this false baseline.  Accordingly, without more, we would be firmly inclined to conclude that Mr. Rosales-Miranda has satisfied the third prong of the plain-error test.

## 2

However, there is more.  An examination of the district court's reasoning confirms the soundness of our inclination to find the third prong of plain-error review satisfied.  Specifically, in downwardly varying from the erroneous Guidelines range, the district court relied on two policy disagreements it had with the Guidelines: (1) its disapproval of "double counting" a defendant's prior convictions, and (2) its belief that the crime-of-violence enhancement was "divorced from empirical data."  R., Vol. II, at 38.  Importantly, those

12

disagreements would still have vitality if the court resentenced Mr. Rosales-Miranda under the proper Guidelines range.

In this regard, as Mr. Rosales-Miranda has noted, had his offense level not been enhanced by sixteen levels because of the domestic-violence convictions, it still would have been properly enhanced by eight levels under U.S.S.G. § 2L1.2(b)(1)(C) for the assault of a police officer, as that conviction would have merited an aggravated-felony enhancement under this Guidelines provision.[4] This aggravated-felony enhancement would have produced the same alleged double-counting problem that initially concerned the district court. Consequently, at a minimum, there is a reasonable probability that the district court would have downwardly varied from the proper Guidelines range—computed using the aggravated-felony enhancement—to address this double-counting issue, yielding a sentence that would have been lower than Mr. Rosales-Miranda's original thirty-six-month sentence. Similarly, to the extent that the district court's initial decision to downwardly vary was predicated on U.S.S.G. § 2L1.2(b)(1)'s purported lack of an empirical foundation, that deficiency would still be present if the court resentenced Mr. Rosales-Miranda under a properly calculated Guidelines

---

[4]     Under U.S.S.G. § 2L1.2(b)(1), considering the specified upward adjustments for which a defendant qualifies, the sentencing court is to apply the one that yields the greatest offense-level increase. Thus, the district court here would only have considered applying the eight-level enhancement for Mr. Rosales-Miranda's aggravated-felony conviction if he were ineligible for the higher, sixteen-level enhancement for the alleged crimes of violence.

13

range. And, therefore, a reasonable probability exists that the court would respond to the supposed empirical deficiency in § 2L1.2(b)(1) in the same manner—that is, by downwardly varying to a sentence that, under the proper Guidelines range, necessarily would be lower than thirty-six months (i.e., Mr. Rosales-Miranda's original sentence).

The government does not offer much to counter this third-prong analysis. Instead, it notes that the determination to be made at this stage of the plain-error test "is not clear." Aplee. Br. at 9. Explaining this rather noncommittal view, the government notes that, although the district court committed clear or obvious error in computing Mr. Rosales-Miranda's Guidelines range, the downward-variant sentence that it actually imposed on him—that is, thirty-six months—undisputedly falls within the correct Guidelines range. There is, it reasons, "some tension within this Court's precedent," *id.* at 10, when the actual sentence that a defendant received falls within the Guidelines range that would have been computed *absent the error* (i.e., the proper Guidelines range), regarding whether the defendant should be deemed as a matter of law *not to* have been prejudiced by the error.

As its sole example of a case holding that in such a situation a defendant should not be found to have been prejudiced, the government cites *United States v. Hoskins*, 654 F.3d 1086, 1099 (10th Cir. 2011). In *Hoskins*, we reasoned that even if the defendant could demonstrate clear or obvious error that had increased

14

her applicable sentencing range, she could not establish prejudice because the actual sentence imposed by the district court fell within the proper lower Guidelines range. *Id.*

We recognize that *Hoskins* could be viewed as obstructing the conclusion that we reach at the third prong. However, viewed in the context of our precedent as a whole, *Hoskins* does not dictate our course here. It is axiomatic that "when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996); *accord United States v. Rodriguez-Aguirre*, 414 F.3d 1177, 1185 n.10 (10th Cir. 2005). And, to the extent that *Hoskins* militates against the path that we take here, it also runs counter to *United States v. Osuna*, 189 F.3d 1289 (10th Cir. 1999), a pre-*Hoskins* precedential decision of our court.

In *Osuna*, contrary to *Hoskins*, we concluded that the third prong of the plain-error test *was* satisfied, even though (like here) the defendant's actual sentence—despite the district court's sentencing error—fell within the properly computed Guidelines range. 189 F.3d at 1294–95. Furthermore, in reaching this result, we relied on an even earlier precedential decision—namely, *United States v. Urbanek*, 930 F.2d 1512 (10th Cir. 1991). There, in an analogous setting, we refused to declare harmless a district court's erroneous obstruction-of-justice enhancement under U.S.S.G. § 3C1.1—in other words, we found that the adjustment *was* prejudicial—even though the defendant's proper Guidelines range

15

substantially overlapped with the erroneous one. *Urbanek*, 930 F.2d at 1515–16. We felt "compelled to remand for resentencing" because "the district court did not specifically state that [the defendant's] sentence would have been the same with or without the obstruction of justice adjustment."[5] *Id.* at 1516. As was true of *Urbanek*, the district court here did not specifically state—indeed, did not even intimate—that it would have reached the same sentence if Mr. Rosales-Miranda had not been (erroneously) assigned the crime-of-violence adjustment, and for the reasons discussed above, we do not think there is a reasonable probability that it would have reached the same sentence. Thus, insofar as *Hoskins* would impede us from reaching our otherwise sound conclusion that the third prong of the plain-error test is satisfied, guided by our intra-circuit-conflict rules, and taking note of our earlier, pre-*Hoskins* precedential decisions in *Osuna* and *Urbanek*, we do not feel obliged to follow *Hoskins*.

In sum, because Mr. Rosales-Miranda has shown a reasonable probability that the relevant outcome—his sentence—would have been different without the

---

[5] The Third Circuit's reasoning in *Langford* underscores the soundness of the approach that our court took in *Osuna* and *Urbanek*. *See Langford*, 516 F.3d at 216 ("Although some courts have adopted an 'overlapping range' rationale, we conclude that such an 'overlap' does not necessarily render an error in the Guidelines calculation harmless. Such an overlap, alone, proves too little. The record must show that the sentencing judge would have imposed the same sentence under a correct Guidelines range, that is, that the sentencing Guidelines range did not affect the sentence actually imposed. The overlap may be helpful, but it is the sentencing judge's reasoning, not the overlap alone, that will be determinative.").

error, he has met his burden of showing that his substantial rights were affected. Accordingly, he has satisfied the third prong of the plain-error test.

**B**

Under the fourth prong of the plain-error test, the defendant must show that the complained-of error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Figueroa-Labrada*, 720 F.3d 1258, 1266 (10th Cir. 2013) (internal quotation marks omitted). "The fourth prong of the plain error test is discretionary," *United States v. Turrietta*, 696 F.3d 972, 984 (10th Cir. 2012), and its standard is a "demanding standard, and of course, depends on the facts of the particular case," *United States v. Gonzalez-Huerta*, 403 F.3d 727, 737 (10th Cir. 2005) (citation omitted).

Reversal on the fourth prong is appropriate only where the error is "'particularly egregious' and the 'failure to notice the error would result in a miscarriage of justice.'" *United States v. Rufai*, 732 F.3d 1175, 1195 (10th Cir. 2013) (quoting *Gonzalez-Huerta*, 403 F.3d at 736). As part of this showing, in the sentencing context, a defendant "must demonstrate a strong possibility of receiving a significantly lower sentence" but for the error. *United States v. Mullins*, 613 F.3d 1273, 1294 (10th Cir. 2010) (quoting *United States v. Meacham*, 567 F.3d 1184, 1190 (10th Cir. 2009)) (internal quotation marks omitted).

However, a Guidelines range that is the product of "obvious calculation

17

errors contained in the PSR . . . will be noticed more freely on plain error review." *United States v. Johnson*, 414 F.3d 1260, 1265 (10th Cir. 2005). Such a patent, egregious PSR calculation error is present here. The PSR disregarded the express language of the Virginia statute in treating Mr. Rosales-Miranda's domestic-violence convictions as felonies—instead of, properly, as misdemeanors[6]—and the district court endorsed this obvious error and predicated its Guidelines computation on it. The result was a dramatic increase in Mr. Rosales-Miranda's Guidelines range—that is, a doubling of it—and we have determined that there is a reasonable probability that this error prejudiced him. We likewise believe that, under these circumstances, this patent PSR computation error should militate in favor of a conclusion that the fourth prong of the plain-error test is satisfied.

Furthermore, we are confident that there is a strong possibility that, absent the error, the district court would have imposed a significantly lesser sentence on Mr. Rosales-Miranda. Consistent with our third-prong reasoning, we predicate this conclusion on the fact that, in resentencing, the district court would be starting its § 3553(a) analysis from a substantially lower Guidelines range; and on our view that nothing in the record suggests that the district court would otherwise have abandoned its two principled policy disagreements with the

---

[6] Under the applicable Virginia statute, "[a]ny person who commits an assault and battery against a family or household member is guilty of a Class 1 misdemeanor." Va. Code Ann. § 18.2-57.2(A).

18

Guidelines that led it, in the original sentencing proceeding, to significantly vary downward from the advisory Guidelines range. Indeed, the magnitude of the court's downward variance bears underscoring: based on its policy critique of the Guidelines, the district court imposed a sentence on Mr. Rosales-Miranda that was almost one-half of the low end of what the court thought was the correct advisory Guidelines range.

Whether the court would elect to vary downward so dramatically when faced with the true, substantially lower Guidelines range on resentencing is not the determinative point in this appeal. Rather, our focus is on whether there is a legally cognizable possibility that the difference between the original, error-laden sentence that Mr. Rosales-Miranda received and the lower, more favorable sentence the district court ultimately would impose on resentencing is "sufficiently significant," such that we may conclude that leaving the original sentence in place would "work a miscarriage of justice." *United States v. Cordery*, 656 F.3d 1103, 1108 (10th Cir. 2011).

In *Cordery*, we determined that the possibility that the defendant would receive a sentence that was five months lower than his original, error-based sentence—amounting to a roughly ten percent deviation from his original sentence—was enough to conclude that permitting the original sentence to stand would "work a miscarriage of justice." *Id.* Or, put another way, we determined that the ten percent possible difference in the defendant's sentence was

"sufficiently significant," which led us to conclude that the fourth prong of the plain-error test was satisfied—especially when "on th[e] record there [was] every reason to believe the district court may find a sentence below" the defendant's original sentence in a subsequent resentencing. *Id.*

Here, we are confident that, irrespective of whether the district court would elect to vary downward as dramatically as it did in Mr. Rosales-Miranda's original sentencing, when confronted with the substantially lower, correct Guidelines range, the difference between its new sentence and Mr. Rosales-Miranda's original sentence would be "sufficiently significant" within the meaning of *Cordery*. Starting from a considerably lower, proper Guidelines baseline, there is at least a reasonable basis in the record to conclude that the district court would still meaningfully discount that range (at a minimum, by the ten percent found in *Cordery*), in making manifest its two policy disagreements with the Guidelines. And, as in *Cordery*, on this record, we have "every reason to believe the district court may find a sentence below" Mr. Rosales-Miranda's original sentence. *Id.* Accordingly, under these circumstances, we conclude that Mr. Rosales-Miranda's sentencing error is the kind that "seriously affects the fairness, integrity, or public reputation of judicial proceedings," *Figueroa-Labrada*, 720 F.3d at 1266 (internal quotation marks omitted), and exercise our discretion to "notice the error," *United States v. Eddy*, 523 F.3d 1268, 1270 (10th Cir. 2008) (quoting *Gonzalez-Huerta*, 403 F.3d at 736) (internal quotation marks

20

omitted).

In resisting this conclusion, the government contends that the district court's two policy disagreements led it to disregard the Guidelines range entirely and settle on thirty-six months as the appropriate sentence under § 3553(a)'s sentencing factors. Under the government's view, there is not a significant possibility that lowering the Guidelines range to its proper level would result in the district court imposing a significantly lesser sentence on Mr. Rosales-Miranda because when the court imposed the thirty-six-month sentence on him, the Guidelines range was not a factor in its sentencing calculus (i.e, it ignored the range altogether). *See* Aplee. Br. at 15 ("Instead of following the guidelines in this case, the district court looked to the specific circumstances of Mr. Rosales-Miranda, particularly his extensive criminal history, and based the sentence on the Section 3553(a) factors. . . . Thus, the record suggests that the district court's error in calculating the guideline range did not impact its decision to impose a 36-month sentence." (citation omitted)).

We are not persuaded by the government's reasoning. As we have noted, district courts are obliged to use the advisory Guidelines range as the jumping-off point for their sentencing analyses. *See, e.g.*, *Peugh*, 133 S. Ct. at 2083 ("The post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review."). Consequently,

21

it would have been patent procedural error for the district court to wholly ignore the Guidelines, as the government suggests that it did. Thus, in order for us to employ the government's reasoning in rejecting Mr. Rosales-Miranda's claim of reversible error, we would need to, paradoxically, ascribe further error to the district court. The legal propriety or wisdom of such a facially dubious jurisprudential course need not delay us because we find absolutely no foundation for moving in that direction on this record.

The district court did clearly indicate that its policy disagreements with the Guidelines caused it to view the recommended range as excessive and untrustworthy because of its concerns about alleged double-counting and the relevant Guidelines provision's purported lack of empirical grounding. But there is no indication that the district court abandoned the Guidelines range as the starting point and enduring touchstone in fashioning Mr. Rosales-Miranda's sentence. In this regard, the court's incorporation of its prior reasoning in *Garcia-Jaquez* is notable because there the court's analysis was replete with references to the Guidelines, and the court left no doubt that its intention was not to discard the Guidelines range, but rather to discount it to reflect the court's policy disagreements. *See* 807 F. Supp. 2d at 1015 (declining to give "strict application" to the defendant's Guidelines range because it was "primarily driven by § 2L1.2(b)(1), which is not based on empirical data"); *id.* at 1016 (noting that the purported double-counting problem associated with the defendant's trespass

22

conviction "resulted in a guideline range greater than necessary to achieve the goals of § 3553(a)," but declining to "simply eliminate the trespass conviction from either the offense level or the criminal history category," presumably because it would have been improper to do so and would also have altered the integrity and usefulness of the Guidelines range as a touchstone; rather, indicating "the double-counting was a factor that the Court considered in its overall determination of a sentence" consonant with § 3553(a)'s principles); *cf.* R., Vol. II, at 36–37 ("Let me stress it is not my view that this prior conviction [of Mr. Rosales-Miranda] be eliminated entirely from either the offense level or the criminal history category. Instead, the double counting is a factor I will consider in determining the appropriate sentence to impose in this case."). At bottom, the government's contention that there is not a sufficient possibility that the district court would impose a significantly lesser sentence thus rests on a clear premise—that is, the district court was not influenced by the improper Guidelines range in imposing its original sentence; instead, it entirely discarded that range. However, in our view, there is no foothold in the record for this premise. Accordingly, the government's contention is unpersuasive.

In sum, we hold that Mr. Rosales-Miranda has satisfied his burden under all four prongs of the plain-error test; consequently, we elect to notice the court's error.

**IV**

For the foregoing reasons, we **REVERSE** the district court's sentencing order, and we **REMAND** the case with instructions to **VACATE** Mr. Rosales-Miranda's sentence and to conduct resentencing proceedings consistent with this opinion.