FILED
United States Court of Appeals
Tenth Circuit

July 15, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MOHAMMED IFTIKHAR MALIK,

    Defendant - Appellant.

No. 14-1367
(D.C. No. 1:09-CR-00424-WYD-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **BALDOCK** and **EBEL**, Circuit Judges.

---

Defendant Mohammed Malik, after spending nearly two-and-a-half years in pretrial detention, pleaded guilty to willfully and knowingly making a false statement in an application for a passport, in violation of 18 U.S.C. § 1542, and international parental kidnapping, in violation of 18 U.S.C. § 1204. Due to the lengthy period of pretrial detention served by Malik, the district court sentenced Malik to time served plus a two-year term of supervised release. Malik now appeals, challenging both his guilty pleas and the term of supervised release imposed by the district court. Exercising jurisdiction

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pursuant to 28 U.S.C. § 1291, we reject Malik's challenge to his guilty pleas and affirm his convictions, but remand for resentencing due to a procedural error committed by the district court at the time of sentencing.

## I

Because the parties are familiar with the background facts of this case, and because those facts are not relevant to our resolution of this appeal, we will not repeat them here. Instead, we focus exclusively on the relevant procedural aspects of this case.

On October 6, 2009, a federal grand jury in the District of Colorado returned a single-count indictment charging Malik with willfully and knowingly making a false statement (specifically, forging the signatures of his ex-wife and a notary public) in an application for a passport for his minor daughter, in violation of 18 U.S.C. § 1542. On that same date, an arrest warrant was issued for Malik.

Over two years passed before Malik was arrested at the Los Angeles International Airport on December 9, 2011, when he arrived there on a flight from Pakistan. Malik subsequently appeared before a federal magistrate judge and entered a plea of not guilty. The magistrate judge concluded that Malik was a flight risk and ordered that he be held without bond pending trial.

On February 8, 2012, a federal grand jury returned a superseding indictment charging Malik with two crimes: (1) willfully and knowingly making a false statement in an application for a passport, in violation of 18 U.S.C. § 1542; and (2) international parental kidnapping, in violation of 18 U.S.C. § 1204. The new count (Count 2)

2

specifically alleged that "[o]n or about February 6, 2008, . . . Malik . . . knowingly removed a child, who had been in the United States to Pakistan and other nations with intent to obstruct the lawful exercise of parental rights of the child's mother." ROA, Vol. 1 at 8. On February 13, 2012, Malik appeared before the magistrate judge and pleaded not guilty to both counts alleged in the superseding indictment.

On February 27, 2012, the magistrate judge held a bond release hearing for Malik. At the conclusion of the hearing, the magistrate judge issued a written order continuing Malik's detention. In doing so, the magistrate judge found, in relevant part, as follows:

> I find based on the defendant's history and personal characteristics that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. The evidence establishes that the defendant has been embroiled in a highly contested divorce case in the Colorado state courts which led to custody of his daughter being awarded to the child's mother. The indictment establishes probable cause to believe that the defendant engaged in a false statement to obtain a passport for the child and transported the child, without the mother's knowledge or consent, to Pakistan. The defendant asserts that he has retained counsel to continue litigating matters in the divorce action. The government proffers evidence that the defendant has taken actions in Pakistan to prevent the mother from traveling outside that country and, in particular, to prevent her from returning to the United States in connection with this action and other matters.
>
> I find that this is an instance where personal issues in the divorce action appear to have caused the defendant to engage in irrational and dangerous conduct. There is probable cause to believe that the defendant improperly transported his juvenile daughter, a citizen of the United States, to a distant and dangerous part of the world to avoid compliance with the custody order in the divorce action. There is probable cause to believe that the plaintiff [sic] is willing to attempt to forge international travel documents, and there is evidence that he has access to substantial financial resources. The defendant does not appear to be prepared to accept the custody order of the state court in the divorce action.

3

After considering all appropriate factors, I conclude that the preponderance of the evidence establishes that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required.

Dist. Ct. Docket No. 34 at 3-4. Malik appealed the magistrate judge's order of detention, but the district court denied Malik's motion and ordered him to remain in custody. In doing so, the district court concluded that the government had established, by a preponderance of the evidence, that "Malik present[ed] a flight risk." Dist. Ct. Docket No. 68 at 6.

The parties proceeded to vigorously litigate the case for over two years. During that time period, Malik's appointed counsel was allowed to withdraw due to Malik's dissatisfaction with his representation and new counsel was appointed to represent Malik. In addition, the district court consistently concluded that Malik remained a flight risk and was not entitled to be released from pretrial detention.

Ultimately, Malik appeared before the district court on May 27, 2014, and entered a plea of guilty to both counts of the superseding indictment. Under the terms of the parties' plea agreement, the government, in exchange for Malik's plea, agreed "that he should be released pending sentencing," and further "agree[d] to . . . recommend a term of two years of supervised release" as Malik's sentence. Dist. Ct. Docket No. 217 at 2. In a written "STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY" that he filed with the district court, Malik specifically alleged that (a) "no promises and no threats of any sort ha[d] been made to [him] by anyone to induce [him] or to persuade

4

[him] to enter [his] plea(s) in th[e] case," and (b) "[he] want[ed] to plead guilty and ha[d] no mental reservations about [his] decision." Dist. Ct. Docket No. 218 at 7. And in open court and under oath, Malik stated to the district court that no one had done anything to force him, coerce him, or persuade him to plead guilty against his free will. Dist. Ct. Docket No. 249 at 60. Malik further stated that he had no mental reservations or doubts about entering the pleas of guilty. Id.

On September 2, 2014, the district court sentenced Malik to time served, plus a 24-month term of supervised release as to Count 1 and a 12-month term of supervised release as to Count 2, with both terms to run concurrently.

Malik filed a timely notice of appeal.

II

*Vacatur of guilty pleas*

Malik argues on appeal that we must vacate his guilty pleas because they were the product of an excessive and inherently coercive period of pretrial detention. We disagree.

As a threshold matter, we note that Malik did not present this argument to the district court. He contends, nevertheless, that Fed. R. Crim. P. 11(e) authorizes a defendant to "seek to vacate a guilty plea on direct appeal even where the defendant did not move to withdraw the plea in the district court." Aplt. Br. at 28. Rule 11(e) states: "After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." Contrary to Malik's contention, however, nothing in the language of Rule 11(e) excuses a

5

defendant from raising in a timely fashion a challenge to the voluntariness of a guilty plea. For example, Rule 11(d) allows a defendant to withdraw a plea of guilty "before the court accepts the plea, for any reason or no reason," or "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(1) and (2). Notably, Malik offers no explanation for why he failed to present his argument to the district court prior to sentencing. And, because his argument hinges on the coercion that allegedly occurred as a result of his pretrial detention, Malik knew or should have known of the argument prior to sentencing.

Because Malik never presented his involuntariness argument to the district court, we review it only for plain error. United States v. Dunbar, 718 F.3d 1268, 1279 (10th Cir. 2013). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

"The Due Process Clause of the Fourteenth Amendment requires that a defendant knowingly and voluntarily enter a plea of guilty." Fields v. Gibson, 277 F.3d 1203, 1212-13 (10th Cir. 2002). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Id. at 1213 (internal quotation marks omitted); see North Carolina v. Alford, 400 U.S. 25, 31 (1970). "Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on factual findings and inferences

6

from those findings." Fields, 277 F.3d at 1212.

Nothing in the record on appeal supports Malik's belated assertion that his guilty pleas were involuntary. In a written "STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY" that he filed with the district court prior to entering his guilty pleas, Malik specifically alleged that (a) "no promises and no threats of any sort ha[d] been made to [him] by anyone to induce [him] or to persuade [him] to enter [his] plea(s) in th[e] case," and (b) "[he] want[ed] to plead guilty and ha[d] no mental reservations about [his] decision." Dist. Ct. Docket No. 218 at 7. And in open court and under oath, Malik stated to the district court that no one had done anything to force him, coerce him, or persuade him to plead guilty against his free will. Dist. Ct. Docket No. 249 at 60. Malik further stated that he had no mental reservations or doubts about entering the pleas of guilty. In short, both Malik's written pleadings in the district court and his oral statements at the time of the plea hearing indicated that his guilty pleas were entered knowingly and voluntarily.

Moreover, Malik has not presented any new evidence on appeal that would call into question the validity of what transpired at the plea hearing. Although he argues in his appellate brief that we should deem the circumstances of his pretrial detention coercive, he has not offered an affidavit or other statement indicating that he, in fact, felt coerced at the time he entered his guilty pleas. Thus, there is simply no factual basis in the record on appeal to support a finding that Malik's guilty pleas were involuntary.

Lastly, Malik expressly concedes that his research has not produced a single case

"in which a guilty plea was invalidated as coercive due to allegedly excessive pretrial detention." Aplt. Br. at 32.

For these reasons, we conclude that Malik has failed to establish that any error occurred, let alone one that was plain.

*Procedural reasonableness of Malik's sentence*

Malik next argues that the two-year term of supervised release imposed by the district court is procedurally unreasonable "because it resulted from the district court's incorrect belief that a term of supervised release[], once imposed, cannot be extended." Aplt. Br. at 40. Because Malik failed to raise this issue below, we review it only for plain error. See United States v. Romero, 491 F.3d 1173, 1176-77 (10th Cir. 2007).

Malik's claim of error on this issue centers on the following statement made by the district court in the course of explaining why it was imposing a two-year term of supervised release: "I'd rather have a longer term coupled with good performance than to have a shorter term with problems, because I can[1] make it longer. If I impose one year, I can't then later decide it should be two, and three years is off the table." ROA, Vol. 5 at 21. Malik argues that this statement is contrary to the language of 18 U.S.C. § 3583(e)(2), which provides as follows:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--
> * * *
> (2) extend a term of supervised release if less than the maximum authorized

---

[1] Both parties agree that the district court intended to use the word "can't" instead of the word "can."

8

term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.

18 U.S.C. § 3583(e)(2).

Notably, the government concedes in its appellate brief that the district court's statement was "a plainly erroneous view of the law" because "[s]upervised release can be extended up to three years in this case under 18 U.S.C. § 3583(e)(2)." Aplee. Br. at 21. We agree. Under the plain language of § 3583(e)(2), the district court could have, had it initially imposed a one-year term of supervised release, subsequently modified that term up to three years (the statutory maximum term allowed). See United States v. Thompson, 777 F.3d 368, 375 (7th Cir. 2015) (holding that district "judge was laboring under the misapprehension that, in his words, 'a term of supervised release can be reduced but can't be extended.' That's wrong; it can be extended."). Thus, as the government concedes, the district court committed an error that was plain.

The government also concedes the third and fourth prongs of the plain error test. To begin with, the government states that, "[b]ecause the inability to extend supervised release was the sole reason offered [by the district court] for two years of supervised release, instead of one, the third prong of plain error is met." Id. In other words, the government states, "[t]here is a 'reasonable probability' that Malik's sentence would be different absent the error." Id. (quoting United States v. Rosales-Miranda, 755 F.3d 1253,

9

1262 (10th Cir. 2014)). And, the government acknowledges, "[w]hen the record suggests a strong possibility that the district court would have imposed a lower sentence absent its error, the fourth prong of the plain error test is also met." Id. (citing Rosales-Miranda, 755 F.3d at 1263).

In analyzing the third prong of the plain error test, we "must ask whether we are in doubt that, had the district court'" properly understood its authority to extend Malik's term of supervised release, "it would have imposed the same" two-year term of supervised release. Rosales-Miranda, 755 F.3d at 1258-59. As the government correctly notes, the sentencing transcript in this case suggests that the district court was torn between imposing a one or two-year term of supervised release, and it ultimately decided to impose the two-year term in large part, if not its sole reason, because of its mistaken belief that it lacked the power to subsequently increase the term should problems arise. As a result, we are left in doubt as to the length of the term of supervised release that the district court would have imposed had it properly understood its authority to modify and increase any such term if necessary.

"The fourth prong of the plain error test is discretionary," and "[r]eversal on the fourth prong is appropriate only where the error is particularly egregious and the failure to notice the error would result in a miscarriage of justice." Rosales-Miranda, 755 F.3d at 1262 (internal quotation marks omitted). To satisfy this standard "in the sentencing context," the "defendant must demonstrate a strong possibility of receiving a significantly lower sentence but for the error." Id. (internal quotation marks omitted).

10

As noted, the government has conceded that Malik can satisfy the fourth prong. Although this concession is not binding on us, see United States v. Hairston, 522 F.3d 336, 340 (4th Cir. 2008), we agree that there is a significant possibility that, had the district court properly understood its authority to extend Malik's term of supervised release in the event that Malik violated the terms thereof, it might have initially imposed a one-year term rather than a two-year term.

For these reasons, we conclude that the proper course is to remand to the district court with directions to resentence Malik. Given our conclusion on Malik's procedural challenge, we need not reach his additional arguments regarding the substantive reasonableness of his term of supervised release or his arguments regarding the special and general terms of supervised release imposed by the district court.

## III

We AFFIRM Malik's convictions and REMAND with directions to resentence.

Entered for the Court

Mary Beck Briscoe
Chief Judge

11