**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 20, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

VERNON BROWN,

Defendant - Appellant.

No. 14-3105
(D.C. No. 2:12-CR-20066-KHV-JPO-37)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **SEYMOUR**, and **MATHESON**, Circuit Judges.

Defendant-Appellant Vernon Brown was convicted of a conspiracy involving various drug offenses.[1] 21 U.S.C. § 846. He was sentenced to 120 months' imprisonment and five years' supervised release. 5 R. 1592. He now appeals claiming the district court erred in: (1) admitting evidence concerning his 2010 state conviction for drug distribution; (2) permitting a witness to speak to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Conspiracy to manufacture, possess with intent to distribute, and distribute 280 grams or more of cocaine base and conspiracy to possess with intent to distribute and distribute five kilograms or more of cocaine.

the credibility of a co-defendant witness; and (3) excluding photographs of an un-indicted co-conspirator.  Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

Background

The DEA conducted a long-term investigation, "Living Large 1," that focused on cocaine trafficking between Mexico and Kansas City, Kansas, specifically the 2200 block of Russell Avenue.  3 R. 102, 146, 494.  The conspiracy uncovered spanned from January 2009 to May 31, 2012.  1 R 68.  Co-defendant Djuane Sykes supplied the block and sold both powder and crack cocaine to several individuals, who would then resell it.  3 R. 319; 4 R. 2107–08.  At trial, the government provided ample evidence that one of these individuals was Mr. Brown.

Sykes testified that he and Mr. Brown grew up together and got "into the drug game about the same time."  4 R. at 1596.  He knew that Mr. Brown used marijuana and powder cocaine, but never knew him to smoke crack cocaine.  Id. at 1598.  Nevertheless, Sykes testified that during the time of the conspiracy, Mr. Brown would purchase from him "anywhere from an eight-ball to a half-ounce hard [crack cocaine]."  Id. at 1596.  According to Sykes, Mr. Brown would break these into $10 or $20 rocks that he would resell.  Id. at 1599.  Co-defendant Ralph Mayo also testified that he and Mr. Brown would sell crack, obtained from Sykes,

- 2 -

on Russell Avenue.  5 R. 1234–35.  Upon his arrest, Mr. Brown admitted to selling cocaine but claimed that he was not "the big man."  4 R. 377.  At trial, the government tied Mr. Brown to a specific sale and purchase.

A.    November 6, 2010 Sale

On November 6, 2010, a Kansas City, Kansas Police Department confidential informant purchased about .4 grams of crack cocaine from Mr. Brown.  3 R. 1706–22.  In addition to testimony by two Kansas City, Kansas police officers and video evidence, id. at 1706–22, 2270–82, the government also relied upon a 2011 state conviction for this sale, for which Mr. Brown entered a nolo contendere plea, id. at 1723–29.   As proof, the government offered a 2010 Kansas Sentencing Guidelines Journal Entry of Judgment.  Id.  Mr. Brown objected, arguing that the government had not effectively connected this sale to the conspiracy.  Id.  The district court overruled the objection.  Id.

B.    November 22, 2011 Purchase

The government also introduced evidence that on November 22, 2011, Mr. Brown purchased crack cocaine from Sykes.  That day, while government informant Kevin Cole, Jr. was in Sykes's car, Mr. Brown approached and told Sykes he wanted to purchase a half-ounce, but did not have the money at the time.  4 R. 1659.  Sykes weighed out four grams of crack cocaine for him, even though Mr. Brown only requested 3.5 grams (an eight-ball).  Id. at 1660–61.  When Cole asked if it was "soft" or "hard," Sykes responded that it was "hard," meaning it

- 3 -

was crack cocaine and not powder.  Id. at 1343.


Discussion

A.    Admission of State Conviction

Mr. Brown first argues that admitting his state conviction for distribution of cocaine violated Federal Rules of Evidence 410 and 803.  As evidence of Mr. Brown's participation in the drug conspiracy, the government introduced evidence that he pled guilty to the November 6, 2010 offense in state court (in actuality he entered a nolo contendere plea) and submitted the journal entry reflecting this state conviction.  At trial, Mr. Brown objected that the government had not sufficiently connected the November 6, 2010 sale to the conspiracy.

On appeal, Mr. Brown argues for the application of a harmless error analysis.  Aplt. Br. 15; Aplt. Reply Br. 9.  But because Mr. Brown did not object at trial on the same grounds now raised on appeal, the correct standard of review is for plain error.  United States v. Ramirez, 348 F.3d 1175, 1181 (10th Cir. 2003).  The government argues that Mr. Brown's failure to assert plain error review "marks the end of the road" for his argument.  United States v. De Vaughn, 694 F.3d 1141, 1159 (10th Cir. 2012) (quoting Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1131 (10th Cir. 2011)).  Though the government has the better argument, it is apparent that Mr. Brown could not make the necessary showing for plain error.  To show plain error, Mr. Brown would have to

demonstrate that admitting the evidence of his state conviction was: (1) error, (2) that was plain, (3) that affected his substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of his judicial proceedings. United States v. McBride, 633 F.3d 1229, 1233 (10th Cir. 2011) (quoting United States v. McComb, 519 F.3d 1049, 1054 (10th Cir. 2007)). Defendant must show all four of these elements and fails to do so.

The Federal Rules of Evidence explicitly prohibit the use of a nolo contendere plea. Fed. R. Evid. 410(a)(2); see also Fed. R. Evid. 803(22)(a) (nolo contendere pleas excluded by rule against hearsay); United States v. Rosales-Miranda, 755 F.3d 1253, 1258 (10th Cir. 2014) (defining "plain" as "clear or obvious under current law" (quoting United States v. McGehee, 672 F.3d 860, 876 (10th Cir. 2012))). Thus we clearly have an error that is plain. But Mr. Brown must also show that the admission of the evidence affected his substantial rights—that the error prejudiced him. To do so, he must demonstrate with reasonable probability—"sufficient to undermine confidence in the outcome"—that if the evidence had been correctly excluded, the outcome of the proceeding would have differed. Rosales-Miranda, 755 F.3d at 1258 (quoting United States v. Hasan, 526 F.3d 653, 665 (10th Cir. 2008)). Mr. Brown cannot meet this burden. The government introduced overwhelming evidence to independently establish the November 6, 2010 sale and Mr. Brown's involvement in the conspiracy. Mr. Brown's arguments simply do not undermine confidence

in the outcome, given the remaining evidence pointing to his guilt.

B.      Officer Jones's Testimony

Mr. Brown next argues that the district court erred by permitting DEA Task

Force Officer (TFO) Eric Jones to testify concerning Djuane Sykes's credibility.

At trial, the following exchange occurred between Mr. Brown's counsel (Mr.

Kjorlie) and the TFO:

> Q.[Mr. Kjorlie] You heard Mr. Sykes testify during the -- in front of the jury, correct?
> A. Correct.
> Q. Are there any things there that he said that you felt might not be correct?
> MS. MOREHEAD [government's attorney]: Judge, I'm going to object. He's asking this witness to pass on the credibility of Mr. Sykes.
> MR. KJORLIE: Well, I'm saying is there anything that he said that does not correspond with his knowledge as the case investigator.
> MS. MOREHEAD: I'll withdraw the objection, Judge. I think what he's asking is if he told the truth or not. I'll not object.
> MR. KJORLIE: I was sloppy. Sorry about that.
> A. Sir, I think Mr. Sykes, along with a couple of other individuals that will be testifying here are two of the most --
> MR. CORNWELL [co-defendant Kyle Stephen's counsel]: I'm going to object to that, Judge, that does invade the province of the jury. So if he wants to talk about Sykes he doesn't touch me, that's fine but if he's going to talk about somebody else that's going to come up, I'm going on object.
> MS. MOREHEAD: I don't know. Mr. Cornwell I -- guess can he object to defense? I guess. I don't know. But he asked the question, Judge, that's why I withdrew my objection.
> THE COURT: Would you rephrase the question? Are you only asking about Sykes?
> MR. KJORLIE: Yeah.
> Q. (By Mr. Kjorlie) I'm just asking about Mr. Sykes.
> THE COURT: And whether he has an opinion that Mr. Sykes was making statements that were inconsistent with what he had found in

his investigation?
MR. KJORLIE: Correct.
THE COURT: Okay. You can answer.
A. No, sir. I think Mr. Sykes was exceptionally credible.
Q. (By Mr. Kjorlie) Now, this area of credibility, I guess we're not going to make that decision, the jury's going to make it, correct?
A. (No response.)
Q. Right?
A. Ultimately it is up to them, yes, sir.

4 R. 2176–78. Mr. Brown now objects to the TFOs testimony, arguing that the district court improperly allowed him to vouch for Sykes, preventing the jury from making its own credibility determinations.

The invited-error doctrine precludes this objection.[2] Here, counsel elicited the testimony from the TFO over objection from the other counsel, and also clarified (during the questioning) that credibility was the jury's province. The invited error doctrine prevents "a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt." United States v. Deberry, 430 F.3d 1294, 1302 (10th Cir. 2005). Therefore, even assuming arguendo that permitting the TFO to speak to Sykes's credibility was error, Mr. Brown, as the party who induced the alleged error, cannot seek to set it aside on appeal. See United States v. Burson, 952 F.2d 1196, 1203 (10th Cir. 1991). As a strategic decision, counsel asked a question and received an answer.

---

[2] The government argues in the alternative that Mr. Brown's argument on this claim also fails under plain error review. Aplee. Br. 28–29. Because the issue is easily resolved under the government's first theory of invited error, we need not address plain error.

- 7 -

Mr. Brown cannot now object because the answer was different than expected or desired. Whatever counsel's strategy, we will not consider the error on appeal.

Mr. Brown's reliance on our decisions in United States v. Hill, 749 F.3d 1250 (10th Cir. 2014), and United States v. Charley, 189 F.3d 1251 (10th Cir. 1999), is misplaced. In both Hill and Charley, the government elicited the testimony on credibility and the defendant objected. Hill, 749 F.3d at 1256–57; Charley, 189 F.3d at 1261. In contrast, Mr. Brown, through counsel, both elicited the testimony and now objects to it.

C.    Exclusion of Photos

Finally, Mr. Brown argues that the district court erred in refusing to admit six photographs of an un-indicted coconspirator, Luis Anselmo Ortega-Flores, drinking and surrounded by women. We review a district court's decision regarding the admissibility of evidence for abuse of discretion. Hinds v. Gen. Motors Corp., 988 F.2d 1039, 1047 (10th Cir. 1993) (citing Durtsche v. Am. Colloid Co., 958 F.2d 1007, 1011 (10th Cir. 1992)). At trial, the government objected to the photos as irrelevant. Counsel argued that the photos provided a contrast between his client's lifestyle and the lavish lifestyle of Ortega-Flores. According to Mr. Brown, these photos tended to show that Mr. Brown could not be a member of the "Living Large" conspiracy because he was not "living large"—he did not benefit from the conspiracy's rewards. The district court excluded the evidence as irrelevant to Mr. Brown's membership in the conspiracy,

noting that the government had not put Mr. Brown's lifestyle in issue. We find no abuse of discretion. The evidence was clearly tangential.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge